UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

NIKOLAS SIKELIANOS,                                )

                            Plaintiff,             )       **FIRST AMENDED COMPLAINT**

                                                   )       **05 Civ. 7673 (RJS)(JCF)**

        -against-                                  )

                                                   )       **ECF CASE**

                                                   )

THE CITY OF NEW YORK; MICHAEL                      )

BLOOMBERG, Mayor of the City of New York;          )       **JURY TRIAL DEMANDED**

RAYMOND KELLY, New York City Police                )

Commissioner; STEPHEN HAMMERMAN,                   )

Former Deputy Commissioner for Legal Matters,      )

New York City Police Department; DAVID             )

COHEN, Deputy Commissioner for Intelligence,       )

New York City Police Department; THOMAS            )

DOEPFNER, Assistant Deputy Commissioner for        )

Legal Matters, New York City Police Department;    )

NYPD LIEUTENANT DANIEL ALBANO; NYPD                )

DEPUTY INSPECTOR KERRY SWEET, NYPD                 )

Legal Bureau Executive Officer; NYPD Legal         )

Bureau Senior Counsel RUBY MARIN-JORDAN            )

NYPD LEGAL BUREAU SUPERVISOR(S) AT                 )

PIER 57; JOSEPH  ESPOSITO, Chief of the New        )

York Police Department; THOMAS GRAHAM,             )

Commander, Disorder Control Unit, New York City    )

Police Department; JACK MCMANUS, Assistant         )

Chief, New York City Police Department; BRUCE      )

SMOLKA, former Commander, Patrol Borough           )

Manhattan South, New York City Police              )

Department; TERENCE MONAHAN, Assistant             )

Chief of the Bronx Borough Command; JOHN J.        )

COLGAN, Assistant Chief, New York City Police      )

Department; POLICE CAPTAIN JOSEPH                  )

DOWLING; POLICE OFFICER JAVIER                     )

CORDERO, Shield No. 08134; POLICE OFFICER          )

DAVID MONTANEZ; POLICE OFFICER                     )

MASON WANG; JOHN DOES; RICHARD                     )

ROES; HUDSON RIVER PARK TRUST,                     )

                                                   )

                            Defendants.            )

1

-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff NIKOLAS SIKELIANOS seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.      The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

2

## VENUE

5.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.     Plaintiff NIKOLAS SIKELIANOS filed a Notice of Claim with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.     Plaintiff NIKOLAS SIKELIANOS is a citizen of the United States, and at all times relevant herein resided in the state of California.

8.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

9.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices

3

and/or customs complained of herein.  He is sued in both his individual and official capacities.

10.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

11.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

12.    DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

13.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

14.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and

enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

15.    NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

16.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

17.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

18.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

19.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

20.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

21.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.    He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

22.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and

illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

23.    Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

24.    Defendants DOWLING, CORDERO, MONTANEZ, WANG, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants DOWLING, CORDERO, MONTANEZ, WANG, and JOHN DOES are sued individually and in their official capacity.

25.    Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the

training, retention, supervision, discipline and control of police officers under their command.

Said individual defendants are and were at all times relevant herein acting under color of state

law in the course and scope of their duties and functions as supervisory officers, agents, servants,

and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and

with the power and authority vested in them by THE CITY OF NEW YORK and the New York

City Police Department, and were otherwise performing and engaging in conduct incidental to

the performance of their lawful functions in the course of their duties.  Defendants

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN,

DOWLING and RICHARD ROES are sued individually and in their official capacity.

      26.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC).  Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

27.     Plaintiff NIKOLAS SIKELIANOS came to New York City in late August, 2004 to peacefully and lawfully exercise his rights to free speech and assembly during the period of the Republican National Convention ("RNC").

28.     On the evening of August 31, 2004 plaintiff was exercising his rights to free speech and assembly and bearing witness to events unfolding in the Herald Square area of Manhattan.  He was dressed in costume, and had messages of peace written on his hat and shirt. He had a bicycle with him.  Numerous people and police officers were all around the Herald Square area.

29.     At some point many of the people present there, and many of the police officers present there, began to run to the south.  Plaintiff rode his bicycle in that direction as well, on the roadway, in order to see what the object of interest was.

30.     At some point plaintiff turned to the left to get closer to where he thought the object of interest was.

31.     On information and belief, there was no civilian automotive traffic permitted by the NYPD on the roads that plaintiff traveled after leaving the Herald Square area at that time.

32.     Plaintiff was roughly and unreasonably pulled off his bicycle from behind by defendant DOWLING, and thereby arrested without cause or justification.

33.     Defendant DOWLING and/or Defendants MONTANEZ and WANG held plaintiff down on the ground and pressed his face into the ground.

34.    Plaintiff was picked up off the ground and was taken to another location nearby.

35.    Plaintiff was ordered to kneel on the ground at that location.

36.    A JOHN DOE defendant dressed in a business suit came to that location.  He demanded to know from plaintiff, in sum and substance, what group(s) plaintiff was affiliated with.  Plaintiff explained that he was there alone.

37.    Plaintiff was placed in a van and transported to a police precinct.  When he was taken out of the van and was in front of the precinct police officers mocked him with insults and epithets, and stated, in sum and substance, that since his pants were tight he must be a faggot.

38.    Plaintiff's photograph was taken at that location with defendant CORDERO, who was assigned as plaintiff's arresting officer and who was the deponent on the criminal complaint filed against him with the Criminal Court.

39.    Plaintiff and other individuals were then transported to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

40.    Pier 57 is owned by and/or under the control of defendant HRPT.

41.    Prior to the RNC the CITY OF NEW YORK contracted with the HRPT for the use of Pier 57 as a detention facility.

42.    On information and belief, the vast majority of the almost two thousand people arrested during the course of the period of the RNC were confined for some period of time at Pier 57.

43.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

44.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

45.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

46.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

47.     After his detention at Pier 57, further callous and unreasonable treatment and

conditions of confinement were endured by plaintiff during his transfer to and confinement at the Central Booking Facility at 100 Centre Street.

48.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

49.     During his time in custody plaintiff was subjected to unreasonably tight and painful wrist restraints/handcuffs.

50.     Plaintiff was held in custody of the CITY OF NEW YORK for almost two days.

51.     All charges against plaintiff have been dismissed in their entirety by way of an Adjournment in Contemplation of Dismissal.

52.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

53.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees,

including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue

summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an

improperly long period of time. The intelligence, and the interpretation of intelligence, which

was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a

result of that surveillance and intelligence-gathering grossly misrepresented what could be

expected to occur during the RNC, and encouraged and created this climate of hostility toward

demonstrators and these unconstitutional and illegal policies resulting therefrom.

      54.    This tone of hostility to demonstrators, and the resultant policies, customs,

practices and usages to punish and discourage dissent were further set by statements made by

other high level City Officials, including the Mayor and Police Commissioner, in the period

leading up to and during the RNC. These statements portrayed those who chose to engage in

political protest in the most negative light. This criminalization and/or demonization of people

engaged in political protest was clearly communicated to NYPD police officers and supervisors

through the public statements by NYPD officials, including Police Commissioner Kelly, who

made remarks about the threat posed to New York City by "hard-core" and "dangerous"

protestors. This sentiment was reiterated, summarized and ratified in the public statements of

defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as

"terrorists" and "guilty" criminals.

      55.    Defendants BLOOMBERG and KELLY further displayed their animosity to

demonstrators, and their contempt for the rights of demonstrators, during the RNC period by

discriminatorily and under false pretenses denying the issuance of a permit for use of Central

Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of

the RNC period on August 29, 2004.

56.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

57.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

58.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

59.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

60.     By their conduct and actions in harassing, falsely arresting, maliciously

prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiff, by subjecting plaintiff to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, CORDERO, MONTANEZ, WANG and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

61.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

62.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, DOWLING, and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

64.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### THIRD CLAIM

**LIABILITY OF THE CITY OF NEW YORK**
**FOR CONSTITUTIONAL VIOLATIONS**

65.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

66.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

67.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline

17

employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

68.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

69.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to

move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

70.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

71.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

72.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

73.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

74.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

75.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

76.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

77.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

78.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

79.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

80.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

81.     At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

82.     By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiff to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

83.     These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

84.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

85.     Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

86.     The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, DOWLING, CORDERO, MONTANEZ, WANG, DOES, and ROES

alleged herein, occurred while they were on duty and in uniform, and/or in and during the course

and scope of their duties and functions as New York City police officers, and/or while they were

acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result,

defendant THE CITY OF NEW YORK is liable to plaintiff pursuant to the state common law

doctrine of respondeat superior.

87.     The conduct of employees and officials of the HUDSON RIVER PARK TRUST,

alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK

concerning the improper and dangerous use of Pier 57, occurred in and during the course and

scope of their duties and functions as employees and officials of the HUDSON RIVER PARK

TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiff

23

pursuant to the state common law doctrine of respondeat superior.

88.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

89.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

90.     By the actions described above, defendants DOWLING, CORDERO, DOES, and ROES did inflict assault and battery upon plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

91.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

92.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93.     By the actions described above, defendants DOWLING, CORDERO, DOES, and ROES caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and

conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

94.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

96.     By the actions described above, defendants DOWLING, CORDERO, DOES, and ROES engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

97.     As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### ABUSE OF PROCESS

98.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

99.     By the conduct and actions described above, defendants DOWLING, CORDERO, DOES, and ROES employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

100.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

101.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102.    By the actions described above, defendants DOWLING, CORDERO, DOES, and ROES violated the free speech and assembly rights of plaintiff and retaliated against plaintiff for the exercise of his rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

103.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

104.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105.    By the actions described above, defendants DOWLING, CORDERO, DOES, and ROES violated plaintiff's right to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

106.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

107.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108.    The defendants DOWLING, CORDERO, DOES, and ROES, jointly and severally, negligently caused injuries, emotional distress and damage to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of

the State of New York.

109.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

110.    Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

111.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST

negligently hired, screened, retained, supervised and trained the employees and officials who

injured plaintiff.  The acts and conduct of these employees and officials were the direct and

proximate cause of injury and damage to plaintiff and violated his statutory and common law

rights as guaranteed by the laws and Constitution of the State of New York.

112.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

113.    Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

114.    During his detention at Pier 57, plaintiff was exposed to hazardous materials.  As a result of this exposure, plaintiff reasonably anticipates consequential damages in the form of future expenses for medical monitoring and testing.

115.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**FIFTEENTH CLAIM**

**PRIMA FACIE TORT**

116.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    Defendants DOWLING, CORDERO, DOES, and ROES, without excuse or justification, and intending to inflict harm upon plaintiff by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiff, to wit, the confinement and processing of plaintiff through the stages of pre-arraignment detention in a hazardous and dilatory fashion. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiff was deprived of his liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims

herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.


Dated:        New York, New York
              February 4, 2008


                                   _____/S/_____
                                   JEFFREY A. ROTHMAN, Esq.
                                   (JR-0398)
                                   315 Broadway, Suite 200
                                   New York, New York 10007
                                   (212) 227-2980
                                   Attorney for Plaintiff